FILED
United States Court of Appeals
Tenth Circuit

March 3, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 15-2025

MIGUEL BUSTAMANTE-CONCHAS,

    Defendant - Appellant.

------------------------------

THE NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS,

    Amicus Curiae.
_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:13-CR-02028-JAP-2)**
_____

Todd A. Coberly, Coberly & Martinez, LLLP, Santa Fe, New Mexico, for Defendant-Appellant.

Sean J. Sullivan, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the briefs) Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.

Barbara E. Bergman, University of Arizona, James E. Rogers College of Law, Tucson, Arizona, Norman R. Mueller, Haddon, Morgan & Foreman, P.C., Denver, Colorado, Paul W. Hughes and Michael B. Kimberly, Mayer Brown LLP, Washington, D.C., for Amicus Curiae, The National Association of Criminal Defense Lawyers.
_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, **BRISCOE**, **LUCERO**, **HARTZ**, **HOLMES**, **MATHESON**, **BACHARACH**, **PHILLIPS**, McHUGH, and **MORITZ**, Circuit Judges.*

_____

**LUCERO**, Circuit Judge.

_____

We granted en banc review in this case because it involves a clear failure of the trial court to ask the defendant if he had anything to say on his behalf before imposing sentence—a failure to personally address the defendant and offer an opportunity to allocute. Because our jurisprudence has been somewhat contradictory, we also chose to grant en banc rehearing in order to refine the manner in which we conduct plain-error review following such a denial. For the reasons we state hereafter, the denial of allocution in the instant case satisfies the third prong of United States v. Olano, 507 U.S. 725 (1993), and also requires a conclusion that the fourth prong of Olano was met by the defendant. This necessitates reversal of our previous panel opinion.

Of course, the best practice is for the district court in its trial manuals and other memory prompts to always offer defendants the opportunity to allocute on their behalf. Federal Rule of Criminal Procedure 32 requires no less. Cases of this type arise only when the court and counsel forget this obvious step.

In prior cases, we have stated that a complete denial of allocution at a defendant's initial sentencing hearing is per se or presumptively prejudicial. We now

---

* The Honorable Neil M. Gorsuch heard oral argument but did not participate in the issuance of this Opinion.

clarify that in a rare number of cases, such errors may not result in prejudice. In particular, defendants who receive the minimum permissible sentence will be unable to demonstrate that an allocution error affected their substantial rights. Further, we conclude that a formal presumption is unwarranted. Rather than shifting the burden of proof at the third prong of the plain-error test from the defendant to the government, we think it more accurate to say that in ordinary cases, defendants meet this burden simply by showing that they were denied the right to meaningfully address the court.

We adopt a similar approach with respect to the requirement that a defendant demonstrate a forfeited error seriously affected the fairness, integrity, or public reputation of judicial proceedings. That is, absent some extraordinary circumstance, defendants satisfy this burden if a complete denial of allocution occurs at their initial sentencing hearing. This rule applies regardless of whether the defendant has proffered a proposed allocution statement on appeal.

Applying these principles to the case at bar, we conclude that Miguel Bustamante-Conchas has established plain error. Accordingly, we vacate his sentence and remand for resentencing.

# I

Bustamante-Conchas was charged with conspiracy to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, possession with intent to distribute one kilogram or more of a mixture and substance

3

containing a detectable amount of heroin, and possession of a firearm during and in relation to a drug-trafficking crime. The district court dismissed the gun charge at the close of the government's case. A jury found Bustamante-Conchas guilty of both drug charges.

A pre-sentence investigation report ("PSR") calculated a total offense level of 40 and a criminal history category of I, resulting in a Guidelines range of 292 to 365 months. Bustamante-Conchas objected to the PSR's drug quantity calculations, its inclusion of enhancements for possessing a firearm and maintaining a place for distributing drugs, its allegations regarding the conspiracy's structure, and other factual statements. He also moved for a downward variance, based largely on his difficult upbringing. The motion detailed an impoverished childhood in which Bustamante-Conchas was sent to live with his grandparents, suffered abuse from uncles in his household, and struggled with alcohol addiction. He also submitted letters from family members and others attesting to his good character. The government urged a within-Guidelines sentence of 292 months, arguing that Bustamante-Conchas' childhood circumstances were not so severe as to warrant a variance. It also submitted documents to contest Bustamante-Conchas' claims of good character.

The district court held a sentencing hearing on January 13, 2015, at which it primarily considered drug quantity. The government summarized evidence from trial and presented supplemental evidence regarding drug quantities found at four separate locations. After considering lengthy argument from counsel, the district court

4

accepted the government's contention that quantities at each residence were reasonably foreseeable to Bustamante-Conchas. The parties also disputed whether Bustamante-Conchas should be subject to the sentence enhancements recommended in the PSR. The district court concluded both enhancements were proper.

After adopting the PSR's offense-level calculations, the district court turned to Bustamante-Conchas' motion for a downward variance. Defense counsel requested a sentence of 120 months, pointing to potential sentencing disparities between Bustamante-Conchas and his co-conspirators, and arguing that defendants should not be punished for exercising their right to proceed to trial. Defense counsel also briefly noted the points raised in her motion: that Bustamante-Conchas had been abused and neglected as a child, and had struggled with alcohol addiction. The government argued for a sentence of 292 months, citing the devastating consequences of heroin addiction, the need for deterrence, and Bustamante-Conchas' key role in the conspiracy. The district court questioned whether a within-Guidelines sentence would be necessary if Bustamante-Conchas was barred from returning to the country.

Toward the end of the nearly four-hour hearing, the district court stated that it intended to impose a sentence of 240 months. In providing the reasons for its decision, the court noted Bustamante-Conchas' personal history and alcohol issues. The court further stated its concern with avoiding unwarranted sentencing disparities. It requested additional comment from defense counsel, who argued that the sentence would be disparate as compared to similar offenders. After formally announcing a sentence of 240 months, the court asked if there was any reason that sentence should

not be imposed. Neither party objected, and the sentence was imposed. The court did not personally address Bustamante-Conchas prior to imposing sentence or otherwise offer him an opportunity to allocute.

Bustamante-Conchas filed a timely appeal. A divided panel of this court affirmed his sentence. United States v. Bustamante-Conchas, 832 F.3d 1179 (10th Cir. 2016). Regarding Bustamante-Conchas' claim that the district court plainly erred by denying him the right to allocute, the panel majority held that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. at 1186. It noted that the "district court heard arguments regarding Bustamante-Conchas's defenses, and his request for a low-end sentence"; the "court invited the parties to comment on the sentence multiple times"; "the district court imposed a sentence well-below Bustamante-Conchas's advisory guidelines range"; and "Bustamante-Conchas does not direct us to any additional information he would have provided to the district court had he been given the opportunity to allocute." Id. We granted rehearing en banc, limited to the allocution issue, and vacated the panel opinion. United States v. Bustamante-Conchas, 838 F.3d 1038, 1039 (10th Cir. 2016).

## II

### A

Under Rule 32, a district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."

6

Fed. R. Crim. P. 32(i)(4)(A)(ii). This Rule codifies the right of allocution, which has existed at common law for centuries. See Green v. United States, 365 U.S. 301, 304 (1961) (plurality opinion). The common law right to allocute served a distinctly different purpose than Rule 32: Because criminal defendants were historically barred from testifying on their own behalf, allocution provided the sole opportunity for defendants to plead certain legal defenses. See United States v. Ward, 732 F.3d 175, 181 (3d Cir. 2013); see also Boardman v. Estelle, 957 F.2d 1523, 1533 (9th Cir. 1992) (Hall, J., dissenting). But developments in criminal procedure have not diminished "the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation." Green, 365 U.S. at 304.[1]

Rule 32 provides a defendant with two rights: "to make a statement in his own behalf, and to present any information in mitigation of punishment." Green, 365 U.S. at 304 (quotations omitted). Because the former entitlement is necessarily personal, a district court cannot discharge its duties under Rule 32 by permitting counsel to offer argument in mitigation. Id.; see also United States v. Myers, 150 F.3d 459, 461 (5th Cir. 1998) ("Rule 32 envisions a personal colloquy between the sentencing judge and the defendant." (emphasis omitted)). As the Court in Green explained in an oft-quoted passage, "[t]he most persuasive counsel may not be able to speak for a

---

[1] Despite these deep roots, the denial of allocution is not a jurisdictional or constitutional error. Hill v. United States, 368 U.S. 424, 428 (1962); see also Harvey v. Shillinger, 76 F.3d 1528, 1534 (10th Cir. 1996). Nor does such a denial "inherently result[] in a complete miscarriage of justice" or violate "the rudimentary demands of fair procedure." Hill, 368 U.S. at 428. Accordingly, an allocution error does not provide grounds for habeas relief. Id.

7

defendant as the defendant might, with halting eloquence, speak for himself."  365

U.S. at 304.

Granting defendants an opportunity to personally address the court advances several ends.  First, it serves an informational function by allowing defendants "to present mitigating circumstances."  Ward, 732 F.3d at 181.  Our court has previously recognized that allocution provides an unusually "broad right to present any information to mitigate the sentence."  United States v. Jarvi, 537 F.3d 1256, 1262 (10th Cir. 2008) (quotation omitted).  We have thus held that the right of allocution is denied when a district court attempts to unduly limit the scope of a defendant's allocution statement.  Id.; see also United States v. Sarno, 73 F.3d 1470, 1503-04 (9th Cir. 1995) (right to allocute denied if defendant is permitted to argue only for a within-Guidelines sentence); United States v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994) ("[T]he court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had a right to speak on any subject of his choosing prior to the imposition of sentence.").[2]

Second, allocution permits "the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence."  Ward, 732 F.3d at 181.  It "is designed to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances."  De Alba Pagan, 33

---

[2] Although the right of allocution is broad, district courts retain discretion to limit its duration and bar "irrelevancies or repetitions."  Ashe v. North Carolina, 586 F.2d 334, 337 (4th Cir. 1978).

F.3d at 129; see also United States v. Barnes, 948 F.2d 325, 329 (7th Cir. 1991) ("The right to allocution is the right to have your request for mercy factored into the sentencing decision."). Recognizing the possibility of mercy "reinforces the individuality of both the defendant and the sentencer" and reaffirms that a sentencing judge must "exercise discretion in a wise and humane way." Kimberly A. Thomas, Beyond Mitigation: Towards a Theory of Allocution, 75 Fordham L. Rev. 2641, 2661 (2007).

Third, requiring a sentencing judge to personally engage with a defendant enhances "the appearance of fairness in the criminal justice system." Ward, 732 F.3d at 181. "In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice." Barnes, 948 F.2d at 331. Allocution thus "has value in terms of maximizing the perceived equity of the process." Id. at 328 (quoting 3 ABA Standards for Criminal Justice 18-459 (2d ed. 1980)). Accordingly, "even in situations where a defendant's comments stand little chance of influencing the sentencing judge, the right retains a symbolic significance." United States v. Quintana, 300 F.3d 1227, 1231 (11th Cir. 2002). Allocution can also supply "a forum in which defendants may challenge societal injustice, and may provide answers to victims' questions regarding the crime." United States v. Landeros-Lopez, 615 F.3d 1260, 1267 n.7 (10th Cir. 2010) (citing Mary Margaret Giannini, Equal Rights for Equal Rites?: Victim Allocation, Defendant Allocation, and the Crime Victims' Rights Act, 26 Yale L. & Pol'y Rev. 431, 478-81 (2008)).

**B**

Although the right to allocute is important, most circuits, including ours, have held that unpreserved allocution errors are subject to plain-error review under Fed. R. Crim. P. 52(b).  See United States v. Rausch, 638 F.3d 1296, 1299 n.1 (10th Cir. 2011); United States v. Luepke, 495 F.3d 443, 446-48 (7th Cir. 2007); United States v. Reyna, 358 F.3d 344, 350-51 (5th Cir. 2004) (en banc); United States v. Prouty, 303 F.3d 1249, 1251-52 (11th Cir. 2002); United States v. Adams, 252 F.3d 276, 278-79, 284-85 (3d Cir. 2001); United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994).  But see United States v. Wolfe, 71 F.3d 611, 614 (6th Cir. 1995) (applying de novo review to unpreserved allocution error); De Alba Pagan, 33 F.3d at 129 n.4 (stating that because "it is the court's obligation to invite the defendant's remarks . . . , a defendant ordinarily will not be held to have waived the right of allocution merely because he did not seek to address the court").[3]  We adhere to our prior decisions on this score, mindful of the Supreme Court's admonition that creating exceptions to Rule 52(b) can "skew the Rule's careful balancing of our need to

_____

[3] It is unclear whether plain-error review applies to allocution errors in the Second Circuit, compare United States v. Axelrod, 48 F.3d 72, 72-73 (2d Cir. 1995) (per curiam) ("Resentencing is required if a district court fails to afford a defendant the opportunity to address the court prior to imposing the sentence."), with United States v. Rosenbauer, 47 F. App'x 606, 607 (2d Cir. 2002) (unpublished) (applying plain-error review); the Eighth Circuit, compare United States v. Robertson, 537 F.3d 859, 863 (8th Cir. 2008) (stating that an allocution error "was not plain"), with United States v. Walker, 896 F.2d 295, 301 (8th Cir. 1990) ("[F]ailure to comply with rule 32(a)'s requirement requires a remand for resentencing."); and the Ninth Circuit, compare United States v. Daniels, 760 F.3d 920, 922-23 (9th Cir. 2014) ("assum[ing] without deciding that plain error review applies"), with United States v. Carper, 24 F.3d 1157, 1162 (9th Cir. 1994) ("We review the district court's failure to afford appellant his right of allocution for harmless error.").

encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." Johnson v. United States, 520 U.S. 461, 466 (1997) (quotation omitted). To demonstrate plain error, a litigant must show: "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Mike, 632 F.3d 686, 691-92 (10th Cir. 2011) (quotation omitted).

We do not need to tarry on the first two prongs of the plain-error test. The district court failed to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). Although the district court asked generally for comment before formally imposing sentence, its failure to personally address Bustamante-Conchas was "contrary to well-settled law," United States v. Ruiz-Gea, 340 F.3d 1181, 1187 (10th Cir. 2003), from both this circuit and the Supreme Court, see Hill, 368 U.S. at 426 ("Rule 32(a) requires a district judge before imposing [a] sentence to afford every convicted defendant an opportunity personally to speak [on] his own behalf."); Landeros-Lopez, 615 F.3d at 1264 (same). A complete denial of allocution thus satisfies the first and second prongs of plain-error review. Our analysis of the third and fourth prongs warrants greater discussion.

## C

To satisfy the third prong of plain-error review, a defendant generally must demonstrate that an error was "prejudicial, meaning that there is a reasonable

11

probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Algarate-Valencia, 550 F.3d 1238, 1242 (10th Cir. 2008) (quotation omitted). "The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2009). Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Hasan, 526 F.3d 653, 665 (10th Cir. 2008) (quotation omitted).

The Supreme Court has held that "[n]ormally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy" the third prong of plain-error review. Olano, 507 U.S. at 735. It left open the possibility that some errors "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice." Id. And in our prior cases, we have described allocution errors as "per se prejudicial." Jarvi, 537 F.3d at 1262; Landeros-Lopez, 615 F.3d at 1264 n.4. We have alternatively described our review as "presum[ing] prejudice for allocution errors." Rausch, 638 F.3d at 1301 n.2; United States v. Mendoza-Lopez, 669 F.3d 1148, 1153 (10th Cir. 2012) (quotation omitted).

Our descriptions track those of the majority of our sibling circuits to have considered the issue. See United States v. Perez, 661 F.3d 568, 586 (11th Cir. 2011) ("[W]e presume that the denial of a defendant's right to allocute was prejudicial whenever the possibility of a lower sentence exists."); United States v. Haygood, 549

12

F.3d 1049, 1055 (6th Cir. 2008) ("[T]his court has noted that prejudice is effectively presumed when allocation is overlooked . . . ."); Luepke, 495 F.3d at 451 ("[W]hen there has been a violation of the right to allocute, a reviewing court should presume prejudice when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing sentence."); United States v. Gunning, 401 F.3d 1145, 1149 (9th Cir. 2005) ("[W]hen a district court could have lowered a defendant's sentence, we have presumed prejudice and remanded, even if we doubted that the district court would have done so." (emphases omitted)); Reyna, 358 F.3d at 352 ("[W]e presume that [defendant] was prejudiced by the district court's [allocution] error . . . ."); Adams, 252 F.3d at 287 ("[W]e conclude that we should presume prejudice when a defendant shows a violation of the right and the opportunity for such a violation to have played a role in the district court's sentencing decision." (emphasis omitted)); see also Cole, 27 F.3d at 999 (rejecting per se rule, but holding that if there is any possibility of a lower sentence, "we are unable to say that [defendant] was not prejudiced by the denial of his right to allocute").[4]

As other circuits have explained, defendants who have been denied allocution face a practical difficulty under the third prong because appellate courts "cannot speculate as to the persuasive ability of anything [a defendant] may have said in his

---

[4] Some courts are not clear as to the standard of review but have simply stated that an allocution error requires resentencing. See Walker, 896 F.2d at 301; De Alba Pagan, 33 F.3d at 130.

13

statement to the court." United States v. O'Hallaren, 505 F.3d 633, 636 (7th Cir. 2007); see also Luepke, 495 F.3d at 451 (presumption "avoids our speculation about what the defendant might have said had the right been properly afforded him"); Reyna, 358 F.3d at 352 (same).

We agree, as discussed in greater detail in Section II.D, infra, that appellate courts should not speculate about the persuasive force of a hypothetical allocution. And we further agree that in the vast majority of instances in which a defendant could have received a lesser sentence, an allocution error is prejudicial. However, we think that both per se prejudice or a presumption of prejudice are technically inaccurate descriptors. Rather than adopting a per se rule or formally shifting the burden of proof from the defendant to the government, a more precise description of our jurisprudence is that a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance as described herein.

The Supreme Court adopted a similar framework for plain-error review in cases in which a district court improperly calculated the Guidelines range but nonetheless sentenced a defendant to a term within the correct range. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016). It held that in "the ordinary case," an incorrectly calculated Guidelines range standing alone suffices to show "a reasonable probability of a different outcome." Id. at 1346-47. "Absent unusual circumstances," the Court held, a defendant is not "required to show more." Id. at 1347. Rejecting the government's argument that such a rule essentially flipped the

14

burden of proof by requiring "the Government to prove the harmlessness of every Guidelines error raised on appeal regardless of whether it was preserved," the Court explained that it did not alter the burden, but merely held "that a defendant can rely on the application of an incorrect Guidelines range to show an effect on his substantial rights." Id. at 1348.

So too here. Just as the Guidelines are ordinarily expected to have some impact on a sentence, id. at 1347, there is at least a reasonable probability that allocution matters in the usual case. This is so even if defendants do not identify the particular statements they wished to make. See § II.D, infra. In a survey of federal district judges, more than 80% of respondents stated that allocution was at least "somewhat important" in arriving at a final sentence. Mark W. Bennett, Last Words: A Survey and Analysis of Federal Judges' Views on Allocution in Sentencing, 65 Ala. L. Rev. 735, 757-58 (2014).[5] And the National Association of Criminal Defense

---

[5] Judge Hartz's dissenting opinion suggests that information regarding the sentences of defendants who were offered a chance to allocute is of little relevance because we are dealing with a different cohort of defendants: those who failed to object when they were denied the right of allocution. (Dissenting Op., Hartz, J., at 2.) He contends that among the latter category of defendants, it is more likely that counsel strategically elected against allocution. (Id. at 3.) But this argument ignores the fact that we are concerned only with defendants whose counsel failed to object and who raise the allocution issue on appeal. There would be no reason for counsel who has determined that allocution would be harmful to a client to seek remand for the sole purpose of permitting allocution. The common-sense conclusion to draw in plain error allocution appeals is that counsel simply overlooked the allocution issue at sentencing. As to this group of defendants—those who failed to object but wish to allocute—the cited data is highly probative.

Additionally, Judge Hartz notes that a defendant who is denied an opportunity to allocute might be able to raise the issue in a Fed. R. Crim. P. 35 motion, or seek habeas relief. (Id. at 4, 5 n.3.) Of course, the better practice in all plain error cases is

Lawyers, acting as amicus curiae, has submitted a number of cases in which a defendant who was denied the right to allocute received a lesser sentence after allocution on remand. (Br. of Amicus Curiae Nat'l Ass'n of Criminal Defense Lawyers at 3-4.) Denying a defendant the right to allocute is "tantamount to denying him his most persuasive and eloquent advocate." Adams, 252 F.3d at 288. Without some exceptionally good reason to doubt that allocution would have mattered, the complete denial of a defendant's right to allocute raises a reasonable probability of a lesser sentence.[6]

Of course, there are some instances in which good reason for doubt exists. Several courts have held that an allocution error is not prejudicial if a defendant receives the lowest possible sentence. See United States v. Lewis, 10 F.3d 1086, 1092 (4th Cir. 1993); United States v. Mejia, 953 F.2d 461, 468 (9th Cir. 1991). Under such circumstances, a remand for resentencing would be a "fruitless exercise."

---

for defense counsel to object. But Rule 52(b) permits review of forfeited errors, and we must decide these issues when they are presented on direct appeal regardless of other potential avenues for relief.

[6] Chief Judge Tymkovich's dissent indicates that a defendant cannot show prejudice without identifying some material information that was not presented by counsel. (Dissenting Op., Tymkovich, C.J., at 5, 8.) Although counsel's arguments may satisfy some portion of the informational function of allocution, "it is not only the content of the defendant's words that can influence a court, but also the way he says them." United States v. Noel, 581 F.3d 490, 503 (7th Cir. 2009). Expressing genuine remorse and speaking with sincerity were the two most important aspects of allocution according to district judge respondents in the above-cited survey. Bennett, 65 Ala. L. Rev. at 752. Argument by counsel, whether at sentencing or in briefing to an appellate court, is no substitute for a defendant's opportunity to personally address the sentencing judge.

16

Lewis, 10 F.3d at 1092. We adopt this reasoning: If a sentence could not have been lower, a defendant cannot show prejudice.

A defendant sentenced to the statutory minimum is the clearest example of a sentence that cannot be lowered (absent a motion by the government based on substantial assistance). See United States v. A.B., 529 F.3d 1275, 1280 (10th Cir. 2008) ("As a matter of law, the district court [is] not authorized . . . to consider factors other than substantial assistance in sentencing below the statutory minimum."). The same rule would apply to a defendant sentenced to the minimum agreed term under a Fed. R. Crim. P. 11(c)(1)(C) plea agreement if the district court previously accepted the plea. See Fed. R. Crim. P. 11(c)(1)(C) (noting that a plea agreement for a specific sentence or sentencing range under that subsection "binds the court once the court accepts the plea agreement"). But see United States v. Paladino, 769 F.3d 197, 203 (3d Cir. 2014) (rejecting argument that denial of allocution could not have been prejudicial following an oral plea agreement that tracked Rule 11(c)(1)(C) because "a district court still retains discretion to accept or reject such an agreement"). Both Lewis and Mejia concerned sentences at the bottom of a Guidelines range at a time when the Guidelines were mandatory. See Lewis, 10 F.3d at 1092; Mejia, 953 F.2d at 468. But because district courts may now vary below an advisory Guidelines range, see United States v. Smart, 518 F.3d 800, 809-

10 (10th Cir. 2008), a sentence at the bottom of a Guidelines range does not qualify as an exceptional circumstance justifying a deviation from the general rule. [7]

In this case, Bustamante-Conchas received a sentence of 240 months, substantially below his Guidelines range. Yet the district court retained discretion to vary further. See 21 U.S.C. § 841(b)(1)(A) (setting ten-year mandatory minimum). And although Bustamante-Conchas' counsel argued for a lesser sentence, such argument is no substitute for a personal statement by the defendant. See Green, 365 U.S. at 304 ("The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."). Nor do we consider the absence of a proffered allocution statement in assessing prejudice. See

---

[7] The government has taken the position that prejudice should be presumed in considering allocution issues on plain-error review, and that Bustamante-Conchas has satisfied the third prong based on this presumption. We choose not to accept the government's position and proceed on our own analysis. If "an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993) (quotation omitted). We possess the discretion to reject what is, in effect, "a stipulation on a question of law" by the government, id. at 448, and address the issue directly for several reasons.

First, the question was squarely presented to this court: Bustamante-Conchas, the party with the burden of demonstrating plain error, argues that he has established prejudice because a lesser sentence was available. Second, because we granted en banc review in this case to address a recurring issue in our circuit, concerns of judicial economy counsel in favor of deciding the issue on the merits rather than relying on waiver principles. See Ohlander v. Larson, 114 F.3d 1531, 1538 (10th Cir. 1997) (interests of judicial economy should be considered in determining whether to decide an issue on the merits). Finally, the issue presented is purely a question of law. See generally Elkins v. Comfort, 392 F.3d 1159, 1162 (10th Cir. 2004) (in deciding whether to address alternative theory, an issue of law is more properly considered than a question of fact).

18

§ II.D, <u>infra</u>.  Bustamante-Conchas presents an ordinary denial of the right to allocute.  As such, he has carried his burden of demonstrating prejudice.

**D**

If a defendant satisfies the first three prongs of the plain-error test, we may correct the error "only if it seriously affects the fairness, integrity or public reputation of judicial proceedings."  <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 736 (10th Cir. 2005).  The third and fourth prongs of plain-error review are "independent inquiries."  <u>United States v. Portillo-Vega</u>, 478 F.3d 1194, 1202 (10th Cir. 2007) (quotation omitted).  "The fourth prong is meant to be applied on a case-specific and fact-intensive basis.  We have emphasized that a per se approach to plain-error review is flawed."  <u>Puckett v. United States</u>, 556 U.S. 129, 142 (2009) (quotation omitted).  In considering the fourth prong, "the seriousness of the error must be examined in the context of the case as a whole."  <u>Mendoza-Lopez</u>, 669 F.3d at 1153.

Some courts appear to have adopted a rule that allocution errors necessarily qualify under the fourth prong, at least for cases that satisfy the first three prongs.  <u>See</u> <u>Prouty</u>, 303 F.3d at 1253 (denial of allocution "is not the sort of isolated or abstract error that does not impact the fairness, integrity or public reputation of judicial proceedings" (quotations omitted)); <u>Adams</u>, 252 F.3d at 288 (same); <u>Cole</u>, 27 F.3d at 999 ("When a defendant was unable to address the court before being sentenced and the possibility remains that an exercise of the right of allocution could have led to a sentence less than that received, we are of the firm opinion that fairness

19

and integrity of the court proceedings would be brought into serious disrepute were we to allow the sentence to stand.").

As with the third prong, however, we decline to adopt a per se rule or a formal presumption. Instead, we conclude that absent some unusual circumstance as hereafter described, a complete denial of allocution at a defendant's sentencing hearing will satisfy the fourth prong of the plain-error test. See United States v. Pitre, 504 F.3d 657, 663 (7th Cir. 2007) (although "[r]emand ordinarily is required when a defendant has been denied the right to allocution[,] . . . the general rule does not foreclose the possibility that the facts of a particular case may compel a conclusion that any violation of the defendant's right to allocution did not affect seriously the fairness of the judicial proceedings"); Luepke, 495 F.3d at 451 ("We believe that, in the vast majority of cases, the denial of the right to allocution is the kind of error that undermines the fairness of the judicial process."); Reyna, 358 F.3d at 352 ("In a limited class of cases, a review of the record may reveal, despite the presence of disputed sentencing issues, that the violation of a defendant's right to allocution does not violate the last Olano prong.").

A district court's failure to permit allocution undermines "the legitimacy of the sentencing process." Adams, 252 F.3d at 288. By addressing a defendant personally before imposing sentence, district courts enhance "the appearance of fairness in the criminal justice system." Ward, 732 F.3d at 181; see also Barnes, 948 F.2d at 328, 331 (stating that allocution helps "to avoid the appearance of dispensing assembly-line justice" and "has value in terms of maximizing the perceived equity of the

20

process" (quotation omitted)).  This legitimacy-enhancing function is based in part on the reasonable probability of prejudice.  See United States v. Brown, 316 F.3d 1151, 1161 (10th Cir. 2003) ("[In] considering whether to correct unobjected-to sentencing errors . . . the key concern has been whether correct application of the sentencing laws would likely significantly reduce the length of the sentence.").

Even in instances in which a significantly lesser sentence is unlikely, a denial of allocution subverts other public values.  In a survey of federal district judges, a large majority of respondents stated that allocution serves "other important purposes."  Bennett, 65 Ala. L. Rev. at 749.  District judges noted that allocution provides an opportunity for the defendant to participate in the sentencing process; "benefits the victim, the victim's family, and the defendant's family"; provides judges and the public with a better understanding of the defendant; and helps the defendant to accept responsibility.  Id. at 749-50; see also Landeros-Lopez, 615 F.3d at 1267 n.7 (noting that allocution "may provide answers to victims' questions regarding the crime").  If a court imprisons a person without hearing the defendant's voice, the public may question whether that defendant received the individualized assessment of personal characteristics and circumstances that Congress has mandated.  See 18 U.S.C. § 3553(a).

Nevertheless, there are rare circumstances in which an allocution error does not satisfy the fourth prong.  In some cases, a district court makes clear—following an initial opportunity to allocute—that it is certain to impose a specific sentence if a defendant violates supervised release.  For example, in Rausch, the defendant

21

repeatedly violated the terms of his supervised release. 638 F.3d at 1298-99. At his first revocation hearing, the court invited the defendant to allocute and warned that it would impose a two-year prison term upon any further violations. Id. After the defendant again violated the terms of supervised release, the court sentenced him as promised without inviting further allocution. Id. at 1299. Other circuits have declined to remand under similar circumstances. See Pitre, 504 F.3d at 663; Reyna, 358 F.3d at 352-53.[8] We caution that this exception applies only on re-sentencing; a defendant would be entitled to relief even if a district court made clear that it intended to impose a specific sentence without allocution at an initial sentencing hearing. "Rule 32 denies any judge the discretion to reduce the hearing on sentence to a meaningless formality." United States v. Long, 656 F.2d 1162, 1165 (5th Cir. 1981).

Similarly, remand may not be warranted if a defendant was not wholly denied the opportunity to allocute. That is, if the defendant was offered a meaningful opportunity to address the court and present mitigating circumstances, but the district court failed to fully comply with Rule 32. For example, in United States v. Frost, 684 F.3d 963 (10th Cir. 2012), the district court personally addressed the defendant to ask whether he had any statement to make prior to imposing sentence. Id. at 979.

---

[8] We are mindful that Fed. R. Crim. P. 32.1, which governs supervised release revocation hearings, differs in some respects from Rule 32. See United States v. Craig, 794 F.3d 1234, 1238-39 (10th Cir. 2015) (noting that our circuit has yet to decide whether Rule 32.1 requires the court to personally invite the defendant to speak). However, we consider the foregoing scenario as illustrative of the types of extraordinary circumstances under which an allocution error does not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

The defendant "spoke at length about his upbringing and family circumstances, as well as his perception of unfair treatment at trial and in his past proceedings . . . ." Id. at 980. He also requested a lesser sentence and stated he would satisfy probation and counseling requirements. Id. However, the defendant argued on appeal that the district court violated his right to allocute because, prior to inviting comment, the court stated it was inclined to accept the PSR's recommended sentence. Id. at 979. We held that the fourth prong of the plain-error test was not satisfied because the court's comment did not inhibit the defendant from "making a meaningful statement in an attempt to influence his sentence," and he "had an opportunity to influence the sentence imposed." Id. at 980. If both of these conditions are satisfied, remand may be inappropriate.

The government argues that a defendant cannot satisfy the fourth prong of the plain-error standard without proffering a proposed allocution statement on appeal. In several prior cases, we noted that defendants' failure to proffer statements undercut their claims of plain error. See Craig, 794 F.3d at 1239; Mendoza-Lopez, 669 F.3d at 1154; Frost, 684 F.3d at 980; Rausch, 638 F.3d at 1302. This line of cases appears to stem from the Fifth Circuit's statement in United States v. Magwood, 445 F.3d 826 (5th Cir. 2006), that the defendant did "not furnish any information about what he would have allocuted to that might have mitigated his sentence." Id. at 830. From this comment, the Fifth Circuit has developed a rule under which a defendant is required to proffer an allocution statement to the appellate court. See United States v. Palacios, 844 F.3d 527, 532-33 (5th Cir. 2016) (collecting cases).

23

We reject the proposition that a defendant must proffer an allocution statement to obtain relief, and expressly overrule our prior cases suggesting that such a proffer is relevant. We do so for several reasons. First, accepting a proffered allocution statement would violate the fundamental tenet that appellate courts "will not consider material outside the record before the district court." United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000). Further, even if we were inclined to violate this principle, appellate courts are in a poor position to assess an allocution statement. The Fifth Circuit appears to weigh the persuasive value of a proffer. See Palacios, 844 F.3d at 533 (stating that defendant's proffer "adds detail and description to these assertions [made by counsel at sentencing], presents additional mitigating evidence, and does all of this in his own voice"). But sincerity and credibility are difficult to discern from a cold record. See Wainwright v. Witt, 469 U.S. 412, 429 (1985). To the extent the government contends that we should demand a proffer without assessing its persuasive value, we do not perceive any reason to impose such a formality.

Moreover, much of the value of an allocution statement lies in its ability to convey sincere remorse. "[I]t is not only the content of the defendant's words that can influence a court, but also the way he says them." Noel, 581 F.3d at 503. A district court should see "the teary eye and trembling hand, hear[] the quaking voice." United States v. McIntosh, 198 F.3d 995, 1006 (7th Cir. 2000) (Rovner, J., dissenting

24

in part). A written statement presented to an appellate court cannot fulfill this important sentencing function.[9]

Applying the foregoing principles to the case at bar, we conclude that the district court's failure to permit Bustamante-Conchas an opportunity to allocute seriously affected the fairness, integrity, and public reputation of judicial proceedings. Bustamante-Conchas was not given a meaningful opportunity to address the court. Cf. Frost, 684 F.3d at 979-80. And this was his initial sentencing hearing. Cf. Rausch, 638 F.3d at 1298-99. The panel majority noted that the district court heard argument from counsel and invited further comment (without personally addressing Bustamante-Conchas). See Bustamante-Conchas, 832 F.3d at 1186. But argument from counsel does not obviate the important public purpose served by allocution. See Barnes, 948 F.2d at 328. The panel majority also noted that Bustamante-Conchas received a below-Guidelines sentence. Bustamante-Conchas, 832 F.3d at 1186. However, as explained in Section II.C, supra, we conclude there is a reasonable probability that the district court would have varied further had it heard allocution. In short, no extraordinary circumstances warrant a departure from our general rule that the complete denial of allocution seriously affects the fairness, integrity, or public reputation of judicial proceedings.

---

[9] Chief Judge Tymkovich's dissent agrees that a defendant should not be required to proffer a proposed allocution statement to establish plain error, but faults Bustamante-Conchas for failing to identify additional information he could have offered at sentencing. (Dissenting Op., Tymkovich, C.J., at 8.) That begs the question. This dissenting opinion leaves a gap in its analysis as to how a defendant could make such a showing under its theory absent consideration of extra-record evidence or speculation.

**III**

We **VACATE** Bustamante-Conchas' sentence and **REMAND** to the district court for resentencing.

15-2025, *United States v. Bustamante-Conchas*, **TYMKOVICH**, C.J., dissenting, joined by **HARTZ**, J., **HOLMES**, J., and **PHILLIPS**, J.

This case requires us to consider the application of the plain error standard of review to the denial of a defendant's right of allocution. I agree with the majority that an allocution error reviewed for plain error does not automatically result in reversal. I write separately to clarify the proper allocation of the burden for the third and fourth prongs of the plain error test. And, unlike the majority, I would hold Bustamante-Conchas is not entitled to relief here, because he fails to meet his burden of establishing the district court's allocution error affected his substantial rights, or that the error seriously affected the fairness, integrity, or public reputation of the sentencing proceedings.

Therefore, I respectfully dissent.

\* \* \*

"[D]enial of the right to allocution 'is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Rausch*, 638 F.3d 1296, 1301 (10th Cir. 2011) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Instead, a defendant seeking reversal of an allocution error that he failed to raise in the district court must establish "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hinson*, 585 F.3d 1328, 1333 (10th Cir. 2009). Like the majority,

I discuss only the third and fourth prongs of the plain error test, as the first two prongs are not at issue in this appeal.

It is the defendant who bears the burden of meeting the plain error test. *See United States v. Vonn*, 535 U.S. 55, 62–63 (2002); *United States v. Olano*, 507 U.S. 725, 734–35 (1993). And to satisfy the third prong of plain error, the defendant must show the error affected his substantial rights—in other words, he must demonstrate the error affected the outcome of the district court proceedings. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732–33 (10th Cir. 2005) (en banc). In particular, the defendant "must show 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *See id.* at 733 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 124 (2004) (alterations incorporated)).

Notwithstanding these well settled principles, the majority effectively shifts the burden to the government by recognizing a de facto presumption of prejudice for allocution errors any time the possibility remains a defendant *could have* received a lower sentence but for the alleged error. That is, under the majority's approach, a defendant like Bustamante-Conchas who receives a below-guidelines sentence that is still above the statutory mandatory minimum satisfies the third prong of plain error simply because he *might* have received a lesser sentence. The majority does not require the defendant to make any specific showing of a reasonable probability he would have received a lower sentence absent the error.

2

In doing so, the majority "relieves [the defendant] of his burden of proving prejudice" in what is likely the vast majority of cases and impermissibly flips the plain error standard on its head. *See United States v. Cole*, 27 F.3d 996, 1001 (4th Cir. 1994) (Luttig, J., dissenting); *see also United States v. Reyna*, 358 F.3d 344, 354 (5th Cir. 2004) (en banc) (Jones, J., concurring) ("By adopting a 'presumed prejudice' approach to the unobjected-to denial of allocution in the trial court, this court has effectively shifted a significant portion of the burden of proving plain error from the defendant.").

We have previously rejected a presumption of prejudice. On plain error review, the defendant bears the burden of showing, "based on the record on appeal, that the error affected his substantial rights"—namely, resulted in cognizable, not hypothetical, prejudice. *Gonzalez-Huerta*, 403 F.3d at 733. And the defendant must carry this burden "even when the underlying error is constitutional—as is not the case here." *Id.* (analyzing non-constitutional *Booker* error). Thus, the Supreme Court has consistently required criminal defendants to bear the burden of establishing plain error, even in the context of Rule 11's statute-like requirement that the court ensure a guilty plea is voluntary—a rule which, unlike the right of allocution, has significant constitutional underpinnings. *See Vonn*, 535 U.S. at 59, 67; *see also Reyna*, 358 F.3d at 354–55 (Jones, J., concurring) ("I agree that a defendant's right of allocution is important, but can it

3

be more important than the right to enter a voluntary guilty plea, which was in *Vonn* held subject to plain-error review without presumed prejudice?").

This burden cannot and should not be shifted to the government. We have previously characterized the allocation of the burden on plain error review as "one of the essential characteristics distinguishing plain error from harmless error." *Gonzalez-Huerta*, 403 F.3d at 736; *see also Reyna*, 358 F.3d at 354 (Jones, J., concurring) ("Justice Souter's opinion in *Vonn* expressly distinguishes between harmless error and plain error review based on which party bears the burden to prove that a violation of a defendant's substantial rights has taken place."). And we have stated, "[s]hifting the burden to the appellee would seriously blur this distinction and would be inconsistent with our precedent." *Gonzalez-Huerta*, 403 F.3d at 736. Accordingly, we have expressly rejected a presumption of prejudice in other contexts, such as non-constitutional *Booker* error raised for the first time on appeal. *See id.* ("[W]e do not adopt the . . . burden-shifting approach and hold that [the defendant] bears the burden to establish by a reasonable probability based upon the record on appeal that his substantial rights were affected by the District Court's mandatory application of the Guidelines."). Because I can discern no reason to depart from our precedents, I decline to join the majority in recognizing a de facto presumption of prejudice for allocution errors reviewed for plain error.

4

Without the benefit of the majority's burden-shifting approach, Bustamante-Conchas cannot satisfy the third prong of the plain error test, because he fails to provide the court any indication he would have received a lower sentence had he been permitted to allocute. Instead, he argues prejudice should be presumed for the denial of a defendant's right of allocution, either in every circumstance or when there is some possibility a defendant could have received a lesser sentence if he had been permitted to allocute. These arguments amount to speculation at best. It is far from clear the denial of the right of allocution always results in a harsher sentence or that it did so here. In fact, "many defendants may incriminate themselves further by speaking up at sentencing." *Reyna*, 358 F.3d at 355 (Jones, J., concurring). And, in this case, the district court heard and considered extensive personal-history evidence regarding, among other things, Bustamante-Conchas's unstable childhood, substance abuse issues, and the death of his first child. Surely if there was something else that might have materially affected the district court's sentencing decision, Bustamante-Conchas would have brought it to our attention on appeal. But since Bustamante-Conchas has not shown there was a reasonable probability his sentence would have been lower absent the allocution error, I would hold he cannot meet his burden of establishing prejudice.

The majority likewise impermissibly shifts the burden to the government on the fourth prong of plain error by adopting a rule that, "absent some extraordinary

5

circumstance," a defendant meets his burden if he is completely denied the opportunity to allocute at his original sentencing hearing. (Maj. Op. at 3). "Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 736. Thus, we "will not notice a non-constitutional error, such as the one in the case before us, unless it is both 'particularly egregious' and our failure to notice the error would result in a 'miscarriage of justice.'" *Id.* (quoting *United States v. Gilkey*, 118 F.3d 702, 704 (10th Cir. 1997)). "This is a demanding standard, and of course, depends on the facts of the particular case." *Gonzalez-Huerta*, 403 F.3d at 737. Accordingly, we have generally held reversal is warranted "only in those rare cases in which core notions of justice are offended." *Id.* at 739. In making this determination, we examine "the seriousness of the error . . . in the context of the case as a whole." *United States v. Mendoza-Lopez*, 669 F.3d 1148, 1153 (10th Cir. 2012).

The majority recognizes that "[t]he fourth prong is meant to be applied on a case-specific and fact-intensive basis." (Maj. Op. at 19) (quoting *Puckett v. United States*, 556 U.S. 129, 142 (2009)). Nevertheless, it adopts a de facto presumption that a complete denial of allocution at a defendant's original sentencing hearing automatically satisfies the fourth prong of plain error, absent extraordinary circumstances. But as we have previously recognized, "the

6

Supreme Court has never shifted the burden to the appellee to establish that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 737. The majority does exactly that by requiring the government to meet a newly framed extraordinary circumstances test.

I would instead follow the Fifth Circuit's approach from *United States v. Reyna*, where the en banc court emphasized that the fourth prong of the plain-error test is a fact-specific, contextual inquiry. The court thus held it would "conduct a thorough review of the record to determine if [it] should exercise [its] discretion to correct the [allocution] error." 358 F.3d at 353. The court recognized that the class of cases where an allocution error does not violate the fourth prong of plain error may be limited, *id.*, but it did not relieve the defendant of his burden, as the majority does today.

And considering the district court's error in the context of this case as a whole, I cannot agree with the majority that Bustamante-Conchas has demonstrated the district court's error was particularly egregious or affected the public reputation of the sentencing proceeding. The district court heard arguments regarding Bustamante-Conchas's defenses, and it considered his request for a low-end sentence, which was supported by numerous letters from Bustamante-Conchas's family and friends. At the hearing, the court invited the parties to comment on the sentence multiple times. And after considering such

7

arguments, the district court imposed a sentence well below Bustamante-Conchas's advisory guidelines range, varying downward from a range of 292–365 months to a sentence of 240 months.

Like the majority, I would not require defendants to proffer a proposed allocution statement. But I would at least ask defendants to direct the court to *something* the defendant's allocution could have corrected. For example, a defendant could advise us that his lawyer forgot to plead for mercy, or failed to raise family issues, or mention an unstructured childhood as grounds for a lighter sentence. Yet Bustamante-Conchas does not direct us to *any* additional information he would have provided to the district court had he been given the opportunity to allocute, nor does he explain why a reasonable public observer would have been left with the impression the sentencing proceedings were unfair or lacked legitimacy. On this record, I cannot agree with the majority that the district court's denial of allocution offended core notions of justice.

\* \* \*

In sum, I would not relieve a defendant who raises an allocution error for the first time on appeal of his burden of showing there was a reasonable probability he would have received a different sentence but for the error and the error undermined the fairness and public reputation of the sentencing proceedings. And because I would find the district court's failure to permit Bustamante-

8

Conchas to allocute did not rise to the level of plain error in this case, I would not remand for resentencing.

No. 15-2025, *United States v. Bustamante-Conchas*

**HARTZ**, Circuit Judge, dissenting, joined by **TYMKOVICH**, Chief Judge, and **PHILLIPS**, Circuit Judge:

I join Chief Judge Tymkovich's dissent and add a few words about the prejudice prong of plain-error review.

One requirement for obtaining relief under plain-error review is that the appellant demonstrate that there was "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008) (internal quotation marks omitted). The majority opinion states that "a defendant who shows he has been denied the right to allocute has met his burden of demonstrating prejudice absent some extraordinary circumstance . . . ." Maj. Op. at 14–15. But the probability of prejudice is an empirical question. What is the evidence or commonsense reasoning to support the majority's rule (which I cannot distinguish from a presumption of prejudice)?

The majority opinion notes that 80% of federal district judges who responded to a survey said that allocution is at least somewhat important in sentencing. *See id.* at 15 (citing Mark W. Bennett, Last Words: A Survey and Analysis of Federal Judges' Views on Allocution in Sentencing, 65 Ala. L. Rev. 735, 757–58 (2014) (Bennett)).[1] But that is not the issue. The issue is the likelihood that allocution would *help* a defendant and, in

---

[1] Table C in the article shows that 5.3% of responding judges stated that allocution is extremely important, 22% stated that it is very important, and 53% stated that it is somewhat important. Bennett at 758.

particular, help a defendant in the position of Bustamante-Conchas. The cited article is not strong support for that proposition. It concluded that "allocution rarely results in a different sentence." *Id*. at 758 n.147. In particular, when asked how frequently the defendant's allocution results in a lower sentence below the guideline range (the situation in this case), 77.9% said rarely, 15.1% said neither rarely nor frequently, and 7% said frequently. *Id.* at 759. The study apparently did not ask how often allocution results in a *higher* sentence below the guideline range, but there is no reason to believe it cannot happen. Allocution is not a risk-free enterprise. It may be harmful if, for example, the defendant displays a lack of remorse. It may even be disastrous. I once saw a defendant say that he was going to get the investigating officers and the prosecutor. The sentencing judge's initial reaction was to impose a sentence of twice the statutory maximum.

But even if the survey evidence showed that allocution had assisted defendants frequently enough to constitute a "reasonable probability," that would still not resolve this case. The question addressed by the article—how often has allocution assisted defendants?—is not the relevant question here. The set of defendants we should consider is not those defendants who have exercised the opportunity to make a statement at sentencing. Rather, the relevant set of defendants is those whose attorneys did not request that the defendant be given an opportunity to make a statement after the sentencing judge neglected to address the defendant on the matter. In other words, the question we should be asking is what is the expected utility of allocution when the right to allocute has been forfeited. The answer to the question addressed by the article and the answer to the relevant question may be quite different because the failure of defense

2

counsel to object when the sentencing judge does not call on the defendant to make a statement has significant probative value. It seems to me that if we are to indulge any presumption in this case, it should be that a defense counsel's failure to insist on allocution indicates that allocution would not have been reasonably likely to materially assist the defendant.

This conclusion follows from the nature and practice of allocution. There is no need for counsel to make a snap decision about whether the defendant should address the court. As acknowledged by defense counsel at oral argument, all competent defense attorneys know the importance of allocution and prepare for it. Counsel will discuss allocution with the defendant and, if it appears that the defendant may benefit from it, prepare the defendant to make a statement. In this light, what are the possible reasons why an attorney would not insist on allocution if the trial judge neglected to call on the defendant personally? First, the defendant may have decided, regardless of what counsel advised, not to speak. Second, after hearing what the defendant could say and how the defendant would say it, defense counsel may think that the potential benefit of allocution is negligible or does not justify taking the risk of causing harm. Third, defense counsel may have prepared the defendant for allocution but forgot to insist on allocution at sentencing.

Certainly, in the first two circumstances we should not reverse for resentencing. What about the third? I suspect that such an oversight can occur. At oral argument, defense counsel suggested that trial counsel in this case forgot because of the length of the sentencing proceeding. Possibly, but if counsel believed that the defendant could be

3

significantly assisted by making a statement to the court, one would think that the attorney would take precautions not to forget to do something so valuable. The likelihood of a memory lapse diminishes further when, as here, the sentencing judge provided two reminders, asking if there were any other comments on the proposed sentence and if there was any reason why the sentence should not be imposed. Perhaps more importantly, if defense counsel had expected the defendant's statement to be significantly helpful and the court then imposes a harsher sentence than anticipated, one would think that the sentence would jar counsel into remembering that the defendant had not made his planned statement. The most likely reason why counsel said nothing upon imposition of sentence is that the sentence was a favorable one, as good as counsel could expect, so either (1) counsel consciously made the decision that nothing materially better could come from a statement by defendant or (2) counsel was sufficiently satisfied with the sentence that counsel did not stop to think about what may have gone awry (such as the failure of the defendant to make a statement). Either way, we should not "presume" that allocution would have materially assisted the defendant when the defendant's own (fully informed) counsel thought otherwise. I should also note that defense counsel did not need to immediately point out the denial of the right of allocution. For 14 days after the sentencing hearing, the district court could set aside the sentence for the clear error of violating the defendant's right of allocution. *See* Fed. R. Crim. P. 35(a) (correcting clear error in sentence); *United States v. Delgado*, 256 F.3d 264, 279 (5th Cir. 2001) (applying Rule 35 to denial of right of allocution). There is no apparent reason why defense

4

counsel here could not have recognized the error within that two-week span and alerted the court.[2]

For these reasons, I cannot agree that in the general case we should assume that when defense counsel does not object to the failure of a trial judge to ask the defendant if he or she wishes to make a statement before sentencing, there is a reasonable probability that allocution would have resulted in a lower sentence.[3]

---

[2] I recognize that the amicus brief contains a substantial list of cases in which the district court reduced the defendant's sentence after the appellate court reversed and remanded for violation of the right to allocution. But too little information about the cases is provided to know whether they show that allocution would have made a difference at the original sentencing. I examined the one case on the list that arose in this circuit. I seriously doubt that the reduced sentence in that case was the result of allocution on remand. The defendant had actually addressed the court after sentence was imposed (we reversed because that was too late). Nothing in that brief statement struck me as likely to change the court's mind. More importantly, the government's position changed after remand. It agreed with the defense to jointly recommend a new sentence, perhaps in exchange for the defendant's new agreement not to appeal or seek collateral relief. The judge imposed the jointly recommended sentence. Given how much time it took to check on what happened in that case, I did not attempt to determine what happened in the other cases cited by the amicus brief.

[3] My analysis suggests that if allocution would have helped a defendant, then the failure to object likely resulted from attorney incompetence. In that event, the defendant may have a claim under 28 U.S.C. § 2255, even though denial of allocution in itself is not ground for habeas relief. That claim, however, would be founded on evidence presented to the court regarding what the defendant's statement would have been and why it was not presented, rather than relying on a presumption of prejudice.